FITZGERALD KREDITOR BOLDUC RISBROUGH LLP
Paul Johnson Sievers (State Bar No. 156561)
2 Park Plaza, Suite 850
Irvine, California 92614
Telephone:  949-788-8900
Facsimile:  949-788-8980

Todd C. Ringstad (State  Bar No. 97345)
todd@ringstadlaw.com
Nanette D. Sanders (State Bar No. 120169)
nanette@ringstadlaw.com
RINGSTAD & SANDERS LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA  92630
Telephone: 949-851-7450
Facsimile: 949-851-6926

Counsel for Karen Sue Naylor,
Chapter 7 Trustee, Plaintiff

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>FOOTHILL AND TOWNE, LLC,<br><br>　　　　　Debtor. | Case No. 8:25-bk-10136 SC<br><br>Chapter 7 Proceeding<br><br>Adversary Proc. No. _____ |
| KAREN SUE NAYLOR, Chapter 7 Trustee,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>GREEN LOTUS GROUP, LLC,<br><br>　　　　　Defendant. | **COMPLAINT FOR:**<br>　1. **AVOIDANCE, RECOVERY, AND PRESERVATION OF CONSTRUCTIVE FRAUDULENT TRANSFER [11 U.S.C. § 548 (a)(1)(B);**<br>　2. **RECOVERY OF AND PRESERVATION OF AVOIDED TRANSFER [11 U.S.C. §§ 550 and 551];**<br>　3. **QUIET TITLE;**<br>　4. **SLANDER OF TITLE;**<br>　5. **DISALLOWANCE OF CLAIM [11 U.S.C. § 502(d)]**<br>　6. **DISALLOWANCE OF CLAIM [11 U.S.C. § 502(a)]**<br><br>**STATUS CONFERENCE**<br><br>Date:  [TO BE SET] |

Time: [TO BE SET]
Place: Courtroom 5C
411 West Fourth Street
Santa Ana, California 92701

Karen Sue Naylor (the "Plaintiff"), the duly-appointed and acting Chapter 7 trustee in the above-captioned bankruptcy case of *In re Foothill and Towne, LLC* (the "Debtor"), respectfully alleges as follows:

## STATEMENT OF JURISDICTION AND VENUE

1. This adversary proceeding is brought pursuant to Rules 7001(1) and 7003 of the Federal Rules of Bankruptcy Procedure.

2. The United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Sections 151, 157, and 1334, 11 U.S.C. §§ 502, 548, and 550, and General Order No. 13-05 of the United States District Court for the Central District of California, dated July 1, 2013.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (H), and (O).  To the extent that any claim for relief in this Complaint is determined to be non-core, Plaintiff consents to entry of final judgment and orders of the Bankruptcy Court.

4. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises under and in connection with a case under Title 11 which is pending in this District.

5. This adversary proceeding arises in and is related to the Chapter 7 bankruptcy case commonly known as *In re Foothill and Towne, LLC* that is currently pending in this Court, Case No. 8:25-bk-10136 SC (the "Bankruptcy Case").

## PARTIES TO THE ACTION

6. Plaintiff is the duly appointed and acting Chapter 7 trustee of the Debtor's estate.

7.      Plaintiff is informed and believes, and thereon alleges, that Green Lotus Group, LLC (the "Defendant"), at all times alleged herein is a California limited liability company with its primary offices located in Fountain Valley, California.

### STATEMENT OF STANDING

8.      Plaintiff, as the Chapter 7 trustee in the Bankruptcy Case, has standing to bring this action pursuant to 11 U.S.C. §§ 548 and 550.

### GENERAL ALLEGATIONS

9.      The Bankruptcy Case was filed under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code")[1] on January 17, 2025 (the "Petition Date").

10.      As of the Petition Date, the Debtor and the Defendant were parties to an action styled *Foothill and Towne LLC v. Green Lotus Group, LLC, et al.,* pending before the Los Angeles County Superior Court,  Case Number 24STCV15235 (the "State Court Litigation"). The Debtor commenced the State Court Litigation on June 18, 2024 by the filing of a verified complaint for quiet title, cancellation of instruments, slander of title, and declaratory relief.

11.      As reflected in the Debtor's Schedule A/B: Real Property, at Part 9, No. 55, the primary asset of the Debtor's bankruptcy estate (the "Estate") as of the Petition Date was the real property described as "Vacant Land approx. 2.66 acres located at 700 & 704 East Foothill Blvd." with a then estimated current value of $6,200,000.00 (the "Pomona Property").  The legal description of the Pomona Property is attached hereto as Exhibit "A."

12.      As reflected in the Debtor's Schedule D: Creditors Who Have Claims Secured by Property ("Schedule D") [Dkt. No. 23][2], at Part 1, No. 2.1, the Debtor scheduled the secured claim of the Defendant against the Pomona Property as contingent, unliquidated, and disputed, with an unknown value.

13.      On March 11, 2025, the Debtor filed its *Motion to (1) Approve Sale of Property Free and Clear of Disputed Lien with Such Lien to Attach to the Proceeds Pursuant to 11 U.S.C. 363(b) and (f); (2) Approve Sale Without Overbid or Approve Overbid Procedures; and (3)*

---

[1] Unless otherwise specified, all statutory references made herein are to the Bankruptcy Code.
[2] All Dkt. No. references are to documents on the case docket maintained by the Clerk of the Court in Case No. 8:25-bk-10136 SC.

*Determine that Buyer is Entitled to Protection Pursuant to 11 U.S.C. 363(m)* [Dkt. No. 34], seeking approval of the Court to sell the Pomona Property.

14.    On March 20, 2025, the Defendant filed its *Limited Opposition of Creditor Green Lotus Group, LLC to Debtor's Motion to (1) Approve Sale of Property Free and Clear of Disputed Lien with Such Lien to Attach to the Proceeds Pursuant to 11 U.S.C. 363(b) and (f); (2) Approve Sale Without Overbid or Approve Overbid Procedures; and (3) Determine that Buyer is Entitled to Protection Pursuant to 11 U.S.C. 363(m)* [Dkt. No. 43], whereby the Defendant asserted that its lien on the Pomona Property is a valid, perfected security interest, and requesting that, at a minimum, the sum of $1,250,000 from any sale proceeds be deposited into a blocked, interest-bearing account pending a determination of the parties' rights to the funds.

15.    On April 15, 2025, the Debtor filed a *Notice of Removal* [Dkt. No. 51] as to the State Court Litigation, removing such litigation to the Bankruptcy Court and commencing adversary proceeding 8:25-ap-01227 SC.

16.    The sale of the Pomona Property was approved by Court order entered April 29, 2025 [Dkt. No. 55], which order provided that the sum of $1,500,000 (the "Segregated Funds") was to be segregated from any sale proceeds for the benefit of and subject to the lien of the Defendant as provided by 11 U.S.C. Section 363(e).

17.    On June 5, 2025, the Defendant filed a proof of claim against the Estate, reflected as Claim No. 2-1 on the claims register maintained by the Clerk of the Court, asserting a secured claim in the amount of $1,187,779.28.  Attached to Claim No. 2-1 as Exhibit "B" is an undated *Note* in the amount of $1,000,000 (the "Note"), by and between the Debtor and the Defendant, which contains the following language:  **This Note is meant to serve as additional collateral for loans made to Minh Tuong Nguyen from Green Lotus Group LLC that are currently outstanding totaling $1,699,670.94.  This Note is not a new Loan.  Lender will release this note as those outstanding loans are paid off** [emphasis in the original].  Attached to Claim No. 2-1 as Exhibit "C" is a *Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing* (the "DOT"), reflecting recordation with the Official Records of the Recorder's

Office, Los Angeles County, California, on April 3, 2023, as Instrument No. 20230209904 (the "Transfer").

18.    Notwithstanding the language in the Note, by its express terms, the DOT purportedly vests Defendant with a lien on the Pomona Property securing a loan of $1,000,000 from Defendant to the Debtor.

19.    Contrary to the recitations in the DOT, no money was actually loaned by the Defendant to the Debtor, and no consideration was paid by the Defendant for the security interest purportedly granted to it by the DOT.  As it is not supported by any consideration, the DOT is avoidable.  Pre-petition, the Debtor declared the DOT void and demanded that Defendant reconvey the DOT.

20.    On July 1, 2025, the Court entered its *Order Converting Case to Chapter 7 and Vacating Hearing* [Dkt. No. 68].  Also on July 1, 2025, the Court entered its *Order Sua Sponte Abstaining, Remanding Action to State Court, and Vacating Hearing* [Dkt. No. 12] whereby the State Court Litigation was returned to the Los Angeles Superior Court where it remains pending as of the date hereof.

21.    On July 2, 2025, the Plaintiff was appointed trustee [Dkt. No. 72] of the Debtor's Estate.  At the time of the Plaintiff's appointment, the proposed sale of the Pomona Property remained pending and had not been consummated.

22.    On July 18, 2025, the Court entered its *Amended Order Granting Motion to (1) Approve Sale of Property Free and Clear of Disputed Lien with Such Lien to Attach to the Proceeds Pursuant to 11 U.S.C. 363(b) and (f); (2) Approve Sale Without Overbid or Approve Overbid Procedures; and (3) Determine that Buyer is Entitled to Protection Pursuant to 11 U.S.C. 363(m)* (the "Amended Sale Order") [Dkt. No. 82].  The Amended Sale Order provides that the Segregated Funds are to be held by the Plaintiff in a segregated account, for the sole benefit of the Defendant, with no portion of such funds to be distributed absent further order of the Court.

/ / /

/ / /

23. Escrow for the sale of the Pomona Property closed on July 24, 2025.  Plaintiff is holding the Segregated Funds in trust pending determination of the validity and extent of the claim of the Defendant in such funds and/or against the Estate.

24. Defendant refuses or has otherwise failed to reconvey the DOT.  As a result of Defendant's actions, the DOT constitutes a fraudulent cloud on Plaintiff's legal title to the Pomona Property, and following the sale of such property, on the Segregated Funds.  As a direct and proximate result, the Estate has been damaged in a sum to be proved at the time of trial, including but not limited to the costs the Debtor and the Estate have and will incur to expunge said cloud on title, and the costs of the Debtor's bankruptcy proceedings which were necessary to prevent Defendant from wrongfully foreclosing pending determination of the validity of its disputed DOT, and allow the Estate to consummate the sale of the Property.

**FIRST CLAIM FOR RELIEF**

**(Avoidance of Constructive Fraudulent Transfer – 11 U.S.C. § 548(a)(1)(B)**

25. Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 24, inclusive, as though fully set forth herein.

26. The Debtor received less than reasonably equivalent value or no value in exchange for the Transfer, and any value the Debtor may have received was not sufficiently concrete and quantifiable.

27. At the time that the Transfer was made, the Debtor (i) was insolvent; (ii) became insolvent as a result of the Transfer; (iii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; (iii) intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or (iv) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

28. On the date of the Transfer, the Debtor had no source of income and relied upon capital contributions from its member to satisfy its ordinary course operating expenses.  But for such contributions, the Debtor was unable to pay its debts as they came due.

29. Plaintiff may avoid and recover the Transfer made within two years of the Petition Date as a fraudulent transfer pursuant to 11 U.S.C. § 548.

30. Plaintiff may avoid and recover the value of the Transfer to the Defendant as the initial transferee of the Transfer.

31. Any transfer avoided by the Court is preserved for the benefit of the Estate pursuant to 11 U.S.C. § 551.

### SECOND CLAIM FOR RELIEF

### (To Recover Avoided Transfer from Defendant for the Benefit of the Estate Pursuant to 11 U.S.C. Section 550)

32. Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 28, inclusive, as though fully set forth herein.

33. Plaintiff is informed and believes and based upon such information and belief, alleges that the Defendant was (a) the initial transferee of the Transfer, or (b) the entity for whose benefit each of the Transfer was made, or (c) an immediate or mediate transferee of the Transfer.

34. Transfers avoided under 11 U.S.C. § 548 are recoverable under 11 U.S.C. § 550.

35. Subject to potential defenses, Plaintiff is entitled to recover the Pomona Property or the value of the Pomona Property for the benefit of the Estate under 11 U.S.C. § 550.

### THIRD CLAIM FOR RELIEF

### [For Quiet Title]

36. The Plaintiff re-alleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 35, inclusive, as though fully set forth herein.

37. Pursuant to *California Code of Civil Procedure Sections* 760.010, *et. seq.*, Plaintiff seeks a determination quieting the Estate's title free and clear of the DOT as of the date of recordation of said encumbrance on April 3, 2023 and any and all claims asserted by the Defendant in the Pomona Property adverse to the Estate's title as of or after said date.

/ / /

/ / /

/ / /

**FOURTH CLAIM FOR RELIEF**

**[For Slander of Title]**

38. Plaintiff refers to and incorporates Paragraphs 1 through 37, inclusive, of this Complaint as if fully set forth herein.

39. The DOT is void and invalid because the purported loan to the Debtor was never funded, and a security interest cannot exist without an underlying obligation. The Debtor demanded that the Defendant reconvey the DOT, explaining that the Debtor was being damaged by the DOT. Defendant, however, refused to reconvey the void DOT. The recording of the DOT directly impaired the vendibility of the Pomona Property pre-petition in an amount to be determined at trial.

40. Further, Defendant's refusal to reconvey the DOT resulted in the Estate incurring additional charges in the form of interest and fees to senior and junior encumbrancers by virtue of its delaying the sale of the Pomona Property both pre- and post-petition resulting in damages to the Estate in an amount to be proven at the time of trial.

41. The recording of the DOT made it necessary for the Debtor Plaintiff to retain attorneys to represent it in a bankruptcy proceeding and to bring this action and the State Court Action to cancel the instrument casting doubt on title to the Pomona Property in an amount to be proven at the time of trial.

**FIFTH CLAIM FOR RELIEF**

**[For Disallowance of Claim– 11 U.S.C. § 502(d)]**

42. The Plaintiff re-alleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 41, inclusive, as though fully set forth herein.

43. The Defendant is an entity from which property is recoverable under 11 U.S.C. §§ 542, 543, 550 or 553, or the Defendant received an avoidable transfer under 11 U.S.C. §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a).

44. The Defendant has not paid the amount, or turned over any such property for which the Defendant is liable under 11 U.S.C. §§ 522(i), 542, 543, 550, or 553 of the Bankruptcy Code.

45. Pursuant to 11 U.S.C. § 502(d), the Defendant's Claim No. 2-1 should be disallowed.

### SIXTH CLAIM FOR RELIEF

### [For Disallowance of Claim – 11 U.S.C. § 502(a)]

46. The Plaintiff re-alleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 45, inclusive, as though fully set forth herein.

47. As evidenced by the Note attached to Defendant's Claim No. 2-1, the Debtor received no funds or other benefit from the Defendant in exchange for the Transfer or Claim No. 2-1 asserted by the Defendant against the Estate.

48. Claim No. 2-1 is not *prima facie* valid, and Defendant has failed to establish the validity of Claim No. 2-1 by a preponderance of the evidence.

49. Pursuant to 11 U.S.C. § 502(a), the Defendant's Claim No. 2-1 should be disallowed.

### RESERVATION OF RIGHTS

The Plaintiff reserves her right to supplement and amend the allegations contained in this Complaint, including, but not limited to the right to (i) allege further information regarding all Claims for Relief, (ii) make modifications and/or revisions to Defendant's name, (iii) allege claims against additional defendants, and/or (iv) allege additional causes of action arising in connection with the law and facts set forth herein (collectively, the "Amendments"), that may become known to the Plaintiff at any time during this adversary proceeding through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment on this Complaint, as it may be amended from time to time, as follows:

A. For avoidance of the Transfer, subject to any defenses Defendant may properly establish;

B. For recovery from the Defendant by the Plaintiff of the Transfer or the value of the Transfer;

C.      For determination of the title of the Plaintiff or the Estate in or to the Pomona Property or the Segregated Funds, which are against and adverse to the claim of the Defendant;

D.      For disallowance of any claims asserted by, or scheduled for, the Defendant;

E.      For damages, economic and otherwise, arising out of the Defendant's slander of the Estate's title to the Pomona Property in an amount to be proven at the time of trial;

F.      For recovery of interest, costs, and attorneys' fees and expenses, to the extent recoverable under applicable law and the evidence submitted to the Bankruptcy Court; and,

G.      For such other and further relief as the Court deems just and proper.


Dated:  March 10, 2026                  Respectfully Submitted,

                                        FITZGERALD KREDITOR BOLDUC RISBROUGH LLP


                                        By:      /s/ *Paul Johnson Sievers*
                                                Paul Johnson Sievers
                                                Proposed Special Litigation Counsel for Plaintiff,
                                                Karen Sue Naylor, Chapter 7 Trustee,
                                                *In re Foothill and Towne, LLC*

# Exhibit A

## EXHIBIT  "A"
## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THAT PORTION OF LOT 2 OF SECTION 8, TOWNSHIP 1 SOUTH, RANGE 8 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE CITY OF POMONA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE CENTER LINE OF FOOTHILL BOULEVARD (100.00 FEET WIDE) AS SHOWN ON RECORD OF SURVEY FILED IN BOOK 82, PAGE 27 OF RECORD OF SURVEYS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WITH THE NORTHERLY PROLONGATION OF THE WESTERLY LINE OF PARCEL 3 OF SAID RECORD OF SURVEY; THENCE ALONG SAID PROLONGATION SOUTH 0° 20' 15" EAST 30.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE PARALLEL WITH SAID CENTER LINE OF FOOTHILL BOULEVARD NORTH 89° 09' 25" WEST TO THE NORTHERLY PROLONGATION OF A CERTAIN COURSE IN THE EASTERLY LINE OF TRACT NO. 22678, AS PER MAP RECORDED IN BOOK 602, PAGES 62 TO 65 INCLUSIVE OF MAPS, SAID CERTAIN COURSE HAVING A BEARING LENGTH OF NORTH 0° 20' 15" WEST 75.90 FEET THENCE SOUTH 0° 20' 15" EAST ALONG SAID LAST MENTIONED PROLONGATION AND ALONG SAID CERTAIN COURSE TO THE MOST SOUTHERLY TERMINUS OF SAID CERTAIN COURSE; THENCE NORTH 89° 41' 30" EAST ALONG THE NORTHERLY LINE OF SAID TRACT NO. 22678 TO THE SOUTHWESTERLY CORNER OF SAID PARCEL 3; THENCE NORTH 0° 20' 15" WEST ALONG SAID WESTERLY LINE OF SAID PARCEL 3 AND ITS NORTHERLY PROLONGATION TO THE TRUE POINT OF BEGINNING.

PARCEL 2:

PARCELS 2 AND 3, IN THE CITY OF POMONA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON RECORD OF SURVEY MAP FILED IN BOOK 82, PAGE 27 OF RECORD OF SURVEYS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 3:

AN EASEMENT FOR INGRESS, EGRESS, PUBLIC UTILITIES AND SEWER PURPOSES OVER THE WEST 10.00 FEET OF PARCEL 1, IN THE CITY OF POMONA, AS SHOWN ON RECORD OF SURVEY MAP FILED IN BOOK 82, PAGE 27 OF RECORD OF SURVEYS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN:    8367-003-023, 8367-003-024

# Exhibit B

## NOTE

$1,000,000.00                                                    Orange County, CA

### PROPERTY ADDRESS:  700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

<u>DEFINITIONS</u>

In addition to the capitalized terms defined where used, words used in multiple sections of this Note and/or the corresponding Loan Documents are defined below.

(A)    **"Borrower"** is FOOTHILL AND TOWNE, LLC, a California limited liability company with a principal address at 104 NEST PINE, IRVINE, California 92602.  Borrower is the trustor under the Security Instrument(s) (as hereinafter defined).

(B)    **"Lender"** is GREEN LOTUS GROUP LLC, a California limited liability company, its successors and assigns.  Lender's address is 8892 Cliffside Dr., Huntington Beach, CA 92646.  Lender is the beneficiary under the Security Instrument(s).

(C)    **"Loan"** means the debt evidenced by the Note (as hereinafter defined), plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

(D)    **"Loan Documents"** means collectively the Loan Agreement (as hereinafter defined), Note, Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.

(E)    **"Note"** means this promissory note signed by Borrower and dated March 13th, 2023.  This Note states that Borrower owes Lender One Million Dollars (U.S. $1,000,000.00)and any additional amounts advanced pursuant to the Loan Documents, plus interest.  Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than December 31st, 2023 (the **"Maturity Date"**).

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan that Borrower has received, Borrower promises to pay U.S. $1,000,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender.  Borrower will make all payments under this Note in the form of cash, check or money order.  **This Note is meant to serve as additional collateral for loans made to Minh Tuong Nguyen from Green Lotus Group LLC that are currently outstanding totaling $1,699,670.94.  This Note is not a new Loan.  Lender will release this note as those outstanding loans are paid off.**

Borrower understands that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Lender."

### 2.    INTEREST

Note - Page 1 of 8
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

Interest will be charged on unpaid principal, including protective or future advances as is advanced pursuant to the Loan Documents, until the full amount of Principal has been paid. Borrower will pay interest at a yearly rate of 10.000 %, computed on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months. Interest commences on the day the lender's funds are placed in escrow. Borrower will pay interest on the full amount of the unpaid principal of this Note even though the Lender may hold some of my cash or other property as collateral for repayment and even if Borrower has prepaid payments in accordance with paragraph 3(A). For the avoidance of doubt, Borrower understands that interest will accrue on the entire principal balance of the Loan, including portions of the Loan not yet advanced by Lender. The foregoing interest accrual method is commonly known as "Dutch Interest."

The interest rate required by this Section 2 is the rate Borrower will pay before any default. If Borrower defaults, the above rate shall, at the option of Lender without notice, increase to 15.000 % or the maximum rate permitted under law, whichever is less, and remain at that rate until all defaults are fully cured (the "Default Rate"). Lender and Borrower agree that the Default Rate has been duly and adequately negotiated, and is fair and reasonable considering the costs, burdens, and other impairments foreseeably caused by, or resulting from, events of default under the Loan Documents.

## 3.    PAYMENTS

### (A)    Time and Place of Payments

Borrower will pay all interest on this Note from the date of funding through the end of that month at loan closing. Thereafter Borrower will make monthly payments on the first day of each month during the term of this Note starting with the "First Payment Date" of April 1st, 2023. If, on the Maturity Date, Borrower still owes amounts under this Note, Borrower will pay those amounts in full on that date. In addition to the monthly payment, if required by the Lender, Borrower shall deposit with Lender, on a monthly basis, an amount equal to one-twelfth (1/12) of the taxes and/or insurance (the "Monthly Escrow Deposit") that Lender estimates will be payable during the next ensuing twelve (12) months.

Borrower will make my monthly payments payable to GREEN LOTUS GROUP, LLC. at 8892 Cliffside Dr., Huntington Beach, CA 92646 or at a different place if required by the Lender. Borrower agrees to accept payment billings by email.

If Borrower has prepaid payments when the loan was funded, Lender may retain those payments as earned in full and Lender will note in its records that the period covered by the prepaid payments has been paid as agreed. Prepaid payments shall not be applied to principal. If Borrower repays the loan within this period, any unused prepaid funds will be credited on the payoff.

### (B)    Amount of Monthly Payments

Borrower's monthly interest payment ("Monthly Interest Payment") will be in the amount of U.S. $14,158.34 payable to Green Lotus Group, LLC.

### (C)    Application of Payments.

Note - Page 2 of 8
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

At Lender's sole discretion, my payments under this Note will be applied first to any late charges, fees or penalties then due, next to interest due and finally to unpaid principal. A payment will be deemed made when received at the payment address in subparagraph (A) above or at such other payment address as the Lender may designate from time to time.

## 4. BORROWER'S RIGHT TO PREPAY

Borrower has the right to make payments of Principal at any time before they are due subject to the Prepayment Premium (as hereinafter defined), if applicable. A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will notify Lender in writing. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note. Borrower may only make one Prepayment of Principal per month.

On the date on which a Prepayment, voluntary or mandatory, is made (including any amounts collected by Lender after a default), Borrower shall pay to Lender (A) all accrued and unpaid interest on the amount of Principal being prepaid through and including the date of such Prepayment and (B) a prepayment premium equal to (i) zero percent (0%) of the Principal being prepaid if the Prepayment occurs on or before the first anniversary date of the Loan, or (ii) zero percent (0%) of the Principal being prepaid if the Prepayment occurs after the first anniversary date, but on or before the second anniversary date of the Loan, or (iii) zero percent (0%) of the Principal being prepaid if the Prepayment occurs after the second anniversary date, but on or before the third anniversary date of the Loan, in any case, only to the extent allowed by applicable law (the "Prepayment Premium"). Notwithstanding the foregoing, no Prepayment Premium shall be payable on a Prepayment that occurs within ninety (90) days of the Maturity Date or that is required to be made as a result of a casualty to or the taking by eminent domain of the Property. The Lender will use my Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Lender may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. Prepayments shall be credited to interest and Principal as of the last day of the month in which the same were received, unless payment in full is made.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. The Lender may choose to make this refund by reducing the Principal Borrower owes under this Note or by making a direct payment to Borower. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

Note - Page 3 of 8
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

If the Lender has not received the full amount of any monthly payment by the end of five (5) calendar days after the date it is due, Borrower will pay a late charge to the Lender. The amount of the late charge will be five percent (5.00%) of Borrower's overdue payment of principal and interest or one-hundred dollars ($100), whichever is more and Borrower agrees that such charge is a reasonable estimate of the fair compensation for the loss and damages that Lender will suffer for such late payment. Borrower will pay this late charge promptly but only once on each late payment.

### (B)  Default

If Borrower does not pay the full amount of each monthly payment on the date it is due or the amount due on the Maturity Date, Borrower will be in default, and an "Event of Default" will be deemed to have occurred hereunder.

### (C)  Notice of Default and Acceleration

If Borrower is in default and such default is then continuing, the full amount of Principal which has not been paid, any accrued interest, all other amounts payable under this Note and any other Loan Documents, shall at once become due and payable, at the option of the Lender, without any prior notice to me (except if notice is required by applicable law or the Security Instrument, then after such notice).

### (D)  No Waiver by Lender

Even if, at a time when Borrower is in default, the Lender does not require Borrower to pay immediately in full as described above, the Lender will still have the right to do so if Borrower is in default at a later time. All remedies afforded to the Lender shall be cumulative.

### (E)  Payment of Lender's Costs and Expenses

If the Lender has required Borrower to pay immediately in full as described above, the Lender will have the right to be paid back by Borrower for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, but are not limited to, reasonable attorneys' fees, inspection fees, appraisal fees, returned check fees and other out of pocket costs.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at 104 NEST PINE, IRVINE, California 92602 or at a different address if Borrower gives the Lender a notice of a different address.

Any notice that must be given to the Lender under this Note will be given by delivering it or by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if Borrower is given notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

Borrower and any other person or entity who has obligations under this Note waive the rights of Presentment, Notice of Dishonor and Protest. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid. "Protest" means the right to obtain an official certification of nonpayment.

BORROWER AGREES THAT LENDER'S WILLINGNESS TO OFFER BORROWER THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER. BORROWER FURTHER UNDERSTANDS THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO BORROWER ABSENT THIS WAIVER.

Borrower and any other person or entity who has obligations under this Note waive any rights to and under the California Civil Code Section 2954.10 or otherwise to prepay this Note, in whole or in part, without the Prepayment Premium as described above. Borrower further acknowledges that prepayment of this Note may result in Lender's incurring additional losses, costs, expenses, and liabilities, including, but not limited to, lost revenue and lost profits. Borrower, therefore, agree to pay the Prepayment Premium as described above, if any Principal amount is prepaid, whether voluntarily, or by reason of an acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Property securing the loan giving the Lender the right to accelerate the maturity of this Note as provided in the Security Instrument).

## 10. SECURED NOTE

In addition to the protections given to the Lender under this Note, this Note is secured by that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing against the Property (the "Security Instrument"), dated the same date as this Note. The Security Instrument protects the Lender from possible losses which might result if Borrower does not keep the promises which Borrower makes in this Note, and in the event of default by Borrower under this Note, the Security Instrument or other Loan Documents, Lender may have the right to exercise certain remedies including, without limitation, foreclosure of Borrower's interest in the Property and/or requiring Borrower to make immediate payment in full of all amounts Borrower owes under this Note.

## 11. INDEMNIFIED TAXES.

Any payments by Borrower or on account of any of my obligations under any Loan Document shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with applicable law and the sum payable shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Lender receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Lender. Borrower shall promptly indemnify Lender for all such non-excluded taxes (including interest and additions to tax) and related expenses. Borrower shall promptly deliver evidence satisfactory to Lender of any payments made pursuant to this Section 11. Borrower shall also pay all documentary, recording, filing or similar taxes that arise with respect to any of the Loan Documents.

**12. USE OF NOTE PROCEEDS.**

Borrower represents to the Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.

**13. LOAN AGREEMENT.**

The loan evidenced by this Note is subject to that certain Loan Agreement dated March 13th, 2023 (the "Loan Agreement"), the terms of which are incorporated herein by this reference.

**14. CHOICE OF LAW.**

California law shall exclusively govern the interpretation and enforcement of this Note.

**15. NOTICE TO BORROWER.**

DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS NOTE PROVIDES FOR A BALLOON PAYMENT WHICH WILL BE DUE ON THE DATE SPECIFIED IN PARAGRAPH 3 ABOVE, WHETHER OR NOT YOU HAVE OBTAINED A LOAN TO REPAY THIS LOAN. YOU MAY NOT RELY UPON ANY VERBAL ASSURANCES OR AGREEMENTS BY ANY PERSONNEL OF LENDER OR ANY MORTGAGE BROKER THAT THEY HAVE OR WILL OBTAIN OR ARRANGE A REPLACEMENT LOAN FOR YOU. OBTAINING A REPLACEMENT LOAN IS YOUR RESPONSIBILITY.

**16. TIME.**

Time is of the essence in this Note.

**17. USURY.**

Note - Page 6 of 8
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

It is the intent of Lender and Borrower in the execution of this Note, and all other instruments now or hereafter securing this Note or executed in connection therewith or under any other written or oral agreement by Borrower in favor of Lender to contract in strict compliance with applicable usury law.

## 18. SEVERABILITY.

Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Note shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

[SIGNATURES BEGIN ON THE FOLLOWING PAGE]

Note - Page 7 of 8
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

IN WITNESS WHEREOF, the undersigned Borrower has executed this Note as of the date first written above.

**BORROWER:**

FOOTHILL AND TOWNE, LLC, a California
limited liability company

By: _____
Name: ASHLEY NGUYEN
Title:   President

**BY INITIALING BELOW, BORROWER UNDERSTANDS AND AGREES TO THE WAIVERS IN SECTION 9 ("WAIVERS").**

Borrower's Initials: ___AN__ / _____

# Exhibit C

**This page is part of your document - DO NOT DISCARD**



# 20230209904



**Pages:
0028**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**04/03/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 173.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 398.00 |



**L E A D S H E E T**



202304030270009

00023324696



013998669

**SEQ:
03**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

**ACCOM-KRIS**

E521952

RECORDING REQUESTED BY **FIDELITY NATIONAL TITLE**
**ORANGE COUNTY**

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME  GREEN LOTUS GROUP, LLC

STREET
ADDRESS  8892 CLIFFSIDE DR.

CITY, STATE &
ZIP CODE  HUNTINGTON BEACH, CA 92646

---

SPACE ABOVE FOR RECORDER'S USE ONLY

DEED OF TRUST COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES AND IS TO BE RECORDED IN THE REAL ESTATE RECORDS AS A FIX

---

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

## ACCOMODATION

Recording Requested By and
UPON RECORDATION RETURN TO:

GREEN LOTUS GROUP, LLC.
8892 Cliffside Dr.
Huntington Beach, CA 92646

APN: 8367-003-023, 8367-003-024

(Space Above for Recorder's Use)

DEED OF TRUST COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES AND
IS TO BE RECORDED IN THE REAL ESTATE RECORDS AS A FIXTURE FILING

**FOOTHILL AND TOWNE, LLC, a California limited liability company,**
as trustor
(Borrower)

to

**GREEN LOTUS GROUP LLC, a California limited liability company,**
as beneficiary
(Lender)

### DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

| | |
|---|---|
| Dated: | March 13th, 2023 |
| Location: | 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767 |
| Loan Amount: | $1,000,000.00 |
| Borrower's Org ID Number: | ████████ |
| Legal Description: | See Exhibit A attached |

Security Instrument - Page 1 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "Security Instrument") is made as of March 13th, 2023, by FOOTHILL AND TOWNE, LLC, a California limited liability company, whose address is 104 NEST PINE, IRVINE, California 92602, as trustor ("Borrower"), and LAWYER'S TITLE COMPANY (the "Trustee"), as trustee, whose address is 16755 Von Karman Ave #100, Irvine, CA 92606, for the benefit of GREEN LOTUS GROUP LLC, a California limited liability company, whose address is 8892 Cliffside Dr., Huntington Beach, CA 92646, (together with its successors and assigns, collectively, the "Lender"), as beneficiary.

### RECITALS:

The capitalized terms used in the Security Instrument, if not elsewhere defined in this Security Instrument shall have the meaning given such terms in that certain Loan Agreement, dated as of the date hereof, by and between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**"). Borrower holds the fee simple title to the Property (defined below).

### ARTICLE I - GRANTS OF SECURITY

**Section 1.1** **Trust Property**. Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer, convey and hypothecate to and grant a security interest unto Trustee, in trust for the benefit of Lender, WITH POWER OF SALE and its successors and assigns the following property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the "**Property**"):

(a) Land. The real property described in Exhibit A attached hereto and made a part hereof (the "**Land**");

(b) Additional Land. All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental deed of trust or otherwise be expressly made subject to the lien of this Security Instrument;

(c) Improvements. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

(d) Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions and remainders, and all land lying in the bed of any street, road or avenue, opened

Security Instrument - Page 2 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)     Equipment.  All "goods" and "equipment," as such terms are defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**").  Notwithstanding the foregoing, Equipment shall not include any property belonging to tenants under Leases except to the extent that Borrower shall have any right or interest therein;

(f)     Fixtures.  All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**").  Notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to leases except to the extent that Borrower shall have any right or interest therein;

(g)     Personal Property.  All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights (to the extent assignable), accounts, accounts receivable, franchises (to the extent assignable), licenses (to the extent assignable), certificates and permits (to the extent assignable), and all other personal property of any kind or character whatsoever (to the extent assignable) as defined in and subject to the provisions of the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the "**Uniform Commercial Code**"), other than Fixtures, which are now or hereafter owned by Borrower and which are located within or about the Land

Security Instrument - Page 3 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "**Personal Property**"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

(h)     Leases and Rents.  (i) All leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral and whether now or hereafter in effect) pursuant to which any individual, corporation, partnership, joint venture, limited liability company, estate, trust, unincorporated association, any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing (collectively, "**Person**") is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "**Leases**"), whether before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code, together with any extensions, renewals or replacements of same, (ii) all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt (as defined below), (iii) all claims and rights (the "**Bankruptcy Claims**") to the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code, (iv) all lease guaranties, letters of credit and any other credit support (individually, a "**Lease Guaranty**", and collectively, the "**Lease Guaranties**") given by any guarantor in connection with any of the Leases or leasing commissions (individually, a "**Lease Guarantor**", and collectively, the "**Lease Guarantors**") to Borrower, (v) all rights, powers, privileges, options and other benefits of Borrower as the lessor under any of the Leases and the beneficiary under any of the Lease Guaranties, including without limitation, the immediate and continuing right to make claims for, and to receive, collect and acknowledge receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations (as defined below)), and to do all other things which Borrower or any lessor is or may become entitled to do under any of the Leases or Lease Guaranties, (vi) all proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and/or the Bankruptcy Claims, and the right to receive and apply the same to the payment and performance of the Obligations, including the payment of the Debt, (vii) the right, subject to the provisions of the Loan Agreement, at Lender's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents and (viii) any and all other rights of Borrower in and to the items set forth in clauses (i) through (vii) above, and all amendments, modifications, replacements, renewals and substitutions thereof;

Security Instrument - Page 4 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

(i)     Condemnation Awards. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property ("**Condemnation Proceeds**");

(j)     Insurance Proceeds. All proceeds Borrower is entitled to receive in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property ("**Insurance Proceeds**");

(k)     Tax Certiorari. All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction ("**Liquidation Proceeds**");

(l)     Conversion. All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and condemnation awards, into cash or liquidation claims;

(m)     Rights. The right, subject to the terms and provisions contained in this Security Instrument in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(n)     Agreements. To the extent assignable, all agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting or pertaining to any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening and during the continuance of any default hereunder (following notice on the expiration of any cure period), to receive and collect any sums payable to Borrower thereunder;

(o)     Intellectual Property. All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, URLs or other online media, books and records and all other general intangibles relating to or used in connection with the operation of the Property by Borrower (if at all); provided that, there shall be no security interest in tradenames, trademarks, servicemarks, logos, copyrights, goodwill, URLs or other online media, books and records and all other general intangibles of tenants under the Leases unless expressly granted to Borrower by such tenants;

(p)     Accounts. All reserves, escrows and deposit accounts maintained by Borrower, together with all deposits or wire transfers made to such accounts, all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held

therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof;

(q)    Letter of Credit. All letter-of-credit rights Borrower now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this Section 1.1;

(r)    Tort Claims. All commercial tort claims Borrower now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this Section 1.1;

(s)    Uniform Commercial Code Property. All documents, instruments, chattel paper and intangibles, as the foregoing terms are defined in the Uniform Commercial Code, and general intangibles relating to the Property;

(t)    Minerals. All minerals, crops, timber, trees, shrubs, flowers and landscaping features now or hereafter located on, under or above Land;

(u)    Land Use Permits, Etc. To the extent transferrable, all federal, state and local land use permits, licenses and approvals benefitting the property;

(v)    Proceeds. All proceeds of any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether in cash or in liquidation or other claims, or otherwise; and

(w)    Other Rights. Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (v) above.

AND without limiting any of the other provisions of this Security Instrument, to the extent permitted by applicable law, Borrower, as debtor, expressly grants to Lender, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "Real Property") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Security Instrument be deemed conclusively to be real estate and mortgaged hereby.

### Section 1.2    Assignment of Rents.

(a)    Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases, Rents and all other property described in Section 1.1(h) above; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of the Loan Agreement, Lender grants to Borrower a license, revocable only upon and during the continuance of an Event of Default, to collect, receive, use and enjoy the Rents, as well as any sums due under any Lease Guaranties.

(b)      Borrower hereby authorizes and directs the lessees named in the Leases, any other future lessees or occupants of the Property and all Lease Guarantors to pay over to Lender or to such other party as Lender directs all Rents and all sums due under any Lease Guaranties, upon receipt from Lender of written notice to the effect that Lender is then the holder of this Security Instrument; provided, however, Lender may only send such notices, and take such actions relative to such Rents and sums due under any Lease Guaranties, as are expressly permitted relative thereto pursuant to the terms of the Loan Agreement. Such Rents shall be disbursed and/or applied in accordance with the terms of the Loan Agreement.

**Section 1.3     Security Agreement.** This Security Instrument is both a real property deed of trust and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property. By executing and delivering this Security Instrument, Borrower, as debtor, hereby grants to Lender, as secured party, as security for the Obligations, a security interest in all of Borrower's right, title and interest in, to and under the following property, whether now owned or existing or hereafter acquired or arising and wheresoever located, (i) any accounts, chattel paper, inventory, equipment, instruments, investment property, documents, deposit accounts, commercial tort claims, letter-of-credit rights, goods, general intangibles and supporting obligations (each term in this clause (i) having the meaning given to it under the Uniform Commercial Code), (ii) the Property to the full extent that the Property may be subject to the Uniform Commercial Code, including, without limitation, the Fixtures, the Equipment and the Personal Property, (iii) all renewals, replacements of any of the aforementioned items, or articles in substitution therefor or in addition thereto and (iv) all proceeds and products of the foregoing (said property described in clauses (i) through (iv) is hereinafter referred to collectively as the "**UCC Collateral**"). The foregoing sentence is intended to grant in favor of Lender a first priority continuing lien and security interest in all of Borrower's assets. Borrower authorizes Lender and its counsel to file UCC financing statements (including without limitation continuation statements from time to time) in form and substance satisfactory to Lender, describing the collateral as "all assets of Borrower, whether now owned or existing or hereafter acquired or arising and wheresoever located, including all accessions thereto and products and proceeds thereof, including, without limitation, all fixtures on the Land", or using words to that effect, and any limitations on such collateral description, notwithstanding that such collateral description may be broader in scope than the UCC Collateral described in this Security Instrument. If an Event of Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the UCC Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the UCC Collateral. Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the UCC Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender. Borrower shall pay to Lender on demand any and all actual and reasonable expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the UCC Collateral and in enforcing its rights hereunder with respect to the UCC Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or

other intended action by Lender with respect to the UCC Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) business days prior to such action, shall, except as otherwise provided by applicable law or the Loan Agreement, constitute reasonable notice to Borrower. The proceeds of any disposition of the UCC Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper. Borrower's (debtor's) principal place of business is as set forth on page one hereof and the address of Lender (secured party) is as set forth on page one hereof.

**Section 1.4** **Fixture Filing**. Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Security Instrument, upon being filed for record in the real estate records of the city or county, as applicable, wherein such fixtures are situated, shall operate also as a financing statement naming Borrower as the Debtor and Lender as the Secured Party filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

**Section 1.5** **Pledges of Monies Held**. Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender or on behalf of Lender, including, without limitation, any sums deposited into any accounts required under the Loan Documents, all Insurance Proceeds, Condemnation Proceeds and Liquidation Proceeds, as additional security for the Obligations until expended or applied as provided in this Security Instrument or the Loan Agreement.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Lender and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly pay (or cause to be paid) to Lender the Debt at the time and in the manner provided in the Note, the Loan Agreement and this Security Instrument, shall well and truly perform the Other Obligations as set forth in this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Borrower's obligation to indemnify and hold harmless Lender pursuant to the provisions hereof shall survive any such payment or release.

## ARTICLE II - OBLIGATIONS SECURED

**Section 2.1** **Debt**. This Security Instrument and the grants, pledges, assignments and transfers made in Article I are given for the purpose of securing the outstanding principal amount of Five Hundred Thousand and 0/100 Dollars ($1,000,000.00), interest and any other amounts set forth in, and evidenced by the Note and any other notes issued under the Loan Agreement (collectively, the "**Debt**").

Security Instrument - Page 8 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

**Section 2.2**    **Other Obligations.** This Security Instrument and the grants, pledges, assignments and transfers made in Article I are also given for the purpose of securing the following (the "**Other Obligations**"):

(a)    the performance of all other obligations of Borrower contained herein;

(b)    the performance of each obligation of Borrower and/or any of its affiliates contained in any other Loan Document; and

(c)    the performance of each obligation of Borrower and/or any of its affiliates contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note or any other Loan Document.

**Section 2.3**    **Debt and Other Obligations.** The obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "**Obligations.**"

## ARTICLE III - BORROWER COVENANTS

Borrower covenants and agrees that:

**Section 3.1**    **Payment of Debt.** Borrower will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Security Instrument.

**Section 3.2**    **Incorporation by Reference.** All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

**Section 3.3**    **Title.** Borrower has good and indefeasible fee simple title to the real property comprising part of the Property and good title to the balance of such Property, free and clear of all liens whatsoever except any Permitted Encumbrances.  Such Permitted Encumbrances in the aggregate do not materially and adversely affect the value, operation or use of the Property or Borrower's ability to repay the Debt.  There are no claims for payment for work, labor or materials affecting the Property which are owed by Borrower and are past due and are or may become a lien prior to, or of equal priority with, the liens created by the Loan Documents unless such claims for payments are being contested in accordance with the terms and conditions of this Security Instrument.

**Section 3.4**    **Letter of Credit Rights.** If Borrower is at any time a beneficiary under a letter of credit relating to the Property, rights, titles and interests referenced in Section 1.1 of this Security Instrument now or hereafter issued in favor of Borrower, Borrower shall promptly notify Lender thereof and, at the request and option of Lender, Borrower shall, pursuant to an agreement in form and substance reasonably satisfactory to Lender, either (i) arrange for the issuer and any confirmer of such letter of credit to consent to an assignment to Lender of the proceeds of any drawing under the letter of credit or (ii) arrange for Lender to become the transferee beneficiary of

Security Instrument - Page 9 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

the letter of credit, with Lender agreeing, in each case that the proceeds of any drawing under the letter of credit are to be applied as provided in <u>Section 7.2</u> of this Security Instrument.

<h2 style="text-align:center">ARTICLE IV - OBLIGATIONS AND RELIANCES</h2>

**Section 4.1** <u>Relationship of Borrower and Lender</u>. The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any Note, this Security Instrument or the other Loan Documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

**Section 4.2** <u>No Reliance on Lender</u>. The general partners, members, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

**Section 4.3** <u>No Lender Obligations</u>. (a) Notwithstanding the provisions of <u>Subsections 1.1(h)</u> and <u>(n)</u> or <u>Section 1.2</u>, Lender is not undertaking the performance of (i) any obligations under the Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

(b) By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Note or the other Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

**Section 4.4** <u>Reliance</u>. Borrower recognizes and acknowledges that in accepting the Note, this Security Instrument and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof, that the warranties and representations are a material inducement to Lender in making the Loan; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth in the Loan Agreement.

<h2 style="text-align:center">ARTICLE V - FURTHER ASSURANCES</h2>

**Section 5.1** <u>Recording of Security Instrument, Etc</u>. Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other Loan Documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest

hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all reasonable and actual expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other Loan Documents, any note, deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

**Section 5.2      Further Acts, Etc**. Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, pledges, assignments, notices of pledges or assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all applicable legal requirements. Borrower, within five (5) business days of receipt of written demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements (including without limitation continuation statements from time to time) to evidence more effectively the security interest of Lender in the Property. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including without limitation, such rights and remedies available to Lender pursuant to this Section 5.2.

**Section 5.3      Changes in Tax, Debt, Credit and Documentary Stamp Laws**. (a) If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury then Lender shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable; provided, however, no prepayment premium shall be due and payable in connection therewith.

(b)      Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the taxes assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Debt. If such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable; provided, however, no prepayment premium shall be due and payable in connection therewith.

Security Instrument - Page 11 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

(c)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other Loan Documents, or impose any other tax or charge on the same, other than income taxes or other taxes customarily paid by Lender, Borrower will pay for the same, and, if timely notified and having not paid the same, with interest and penalties thereon, if any.

## ARTICLE VI - DUE ON SALE/ENCUMBRANCE

**Section 6.1**     **Lender Reliance**. Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt and the performance of the Obligations. Borrower acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt or the performance of the Obligations, Lender can recover the Debt by a sale of the Property.

**Section 6.2**     **No Sale/Encumbrance**. Borrower shall not transfer the Property or any part thereof or any interest therein nor permit or suffer the Property or any part thereof or any interest therein or any interest in Borrower to be transferred other than as expressly permitted pursuant to the terms of the Loan Agreement.

## ARTICLE VII - RIGHTS AND REMEDIES UPON DEFAULT

**Section 7.1**     **Remedies**. Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(a)     declare the Debt to be immediately due and payable;

(b)     give such notice of default and of election to cause the Property to be sold as may be required by law or as may be necessary to cause Trustee to exercise the power of sale granted herein; Trustee shall then record and give such notice of Trustee's sale as then required by law and, after the expiration of such time as may be required by law, may sell the Property at the time and place specified in the notice of sale, as a whole or in separate parcels as directed by Lender, or by Borrower to the extent required by law, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, all in accordance with applicable law. Trustee, from time to time, may postpone or continue the sale of all or any portion of the Property by public declaration at the time and place last appointed for the sale and no other notice of the postponed sale shall be required unless provided by applicable law. Upon any sale, Trustee shall deliver its deed conveying the property sold, without any covenant or warranty, expressed or implied, to the purchaser or purchasers at the sale. The recitals in such deed of any matters or facts shall be conclusive as to the accuracy thereof;

(c)  institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(d)  with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the Debt not then due, unimpaired and without loss of priority;

(e)  sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(f)  (i) In connection with any sale or sales hereunder, Lender shall be entitled to elect to treat any of the Property which consists of (x) a right in action, or (y) property that can be severed from the Real Property covered hereby, or (z) any improvements (without causing structural damage thereto), as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Real Property.  Where the Property consists of Real Property, Personal Property, Equipment or Fixtures, whether or not such Personal Property or Equipment is located on or within the Real Property, Lender shall be entitled to elect to exercise its rights and remedies against any or all of the Real Property, Personal Property, Equipment and Fixtures in such order and manner as is now or hereafter permitted by applicable law;

(ii)  Lender shall be entitled to elect to proceed against any or all of the Real Property, Personal Property, Equipment and Fixtures in any manner permitted under applicable law; and if Lender so elects pursuant to applicable law, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, Personal Property, Equipment and Fixtures covered hereby, as designated by Lender and Lender is hereby authorized and empowered to conduct any such sale of any Real Property, Personal Property, Equipment and Fixtures in accordance with the procedures applicable to Real Property;

(iii)  Should Lender elect to sell any portion of the Property which is Real Property or which is Personal Property, Equipment or Fixtures that the Lender has elected under applicable law to sell together with Real Property in accordance with the laws governing a sale of the Real Property, Lender shall give such notice of the occurrence of an Event of Default, if any, and its election to sell such Property, each as may then be required by law.  Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, subject to the terms hereof and of the other Loan Documents, and without the necessity of any demand on Borrower, Lender at the time and place specified in the notice of sale, shall sell such Real Property or part thereof at public auction to the highest bidder for cash in lawful money of the United States.

Lender may from time to time postpone any sale hereunder by public announcement thereof at the time and place noticed for any such sale;

(iv) If the Property consists of several lots, parcels or items of property, Lender shall, subject to applicable law, (A) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (B) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Lender designates. Any Person, including Borrower or Lender, may purchase the Property at any sale hereunder. Should Lender desire that more than one sale or other disposition of the Property be conducted, Lender shall, subject to applicable law, cause such sales or dispositions to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender may designate, and no such sale shall terminate or otherwise affect the lien of this Security Instrument on any part of the Property not sold until all the Obligations have been satisfied in full. In the event Lender elects to dispose of the Property through more than one sale, except as otherwise provided by applicable law, Borrower agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein such sale may be made;

(g) institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note or in the other Loan Documents;

(h) recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the Loan Agreement;

(i) apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or any indemnitor with respect to the Note or of any Person liable for the payment of the Debt;

(j) the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender shall immediately be entitled to possession of all Rents and all sums due under any Lease Guaranties, whether or not Lender enters upon or takes control of the Property. In addition, Lender may, at its option, without waiving any Event of Default, without regard to the adequacy of the security for the Obligations, either personally or by its agents, nominees or attorneys, with or without bringing any action or proceeding, or by a receiver appointed by a court, enter into or upon the Property and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) have, hold, use, operate, manage, lease, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat on such terms and for such period of time as Lender may deem proper and, either with or without taking possession of the Property, in its own name, demand, sue for or otherwise collect and receive all Rents and all sums due under all Lease Guaranties, including, without limitation, those past due and unpaid (with all such Rents and all sums due under any Lease Guaranties to be deposited into any accounts to the extent and as required by the terms of the Loan Agreement), with full power to make from time to time all

Security Instrument - Page 14 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

alterations, renovations, repairs or replacements thereto or thereof as Lender may deem proper; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to negotiate, execute, make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof, and all sums due under any Lease Guaranties (with all such Rents and all sums due under any Lease Guaranties to be deposited into the accounts to the extent and as required by the terms of the Loan Agreement); (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment and performance of the Obligations (including, without limitation, the payment of the Debt, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all reasonable and actual expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(k)  exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment, the Personal Property or any part thereof, and to take such other measures as Lender may reasonably deem necessary for the care, protection and preservation of the Fixtures, the Equipment, the Personal Property, and (ii) request Borrower at its expense to assemble the Fixtures, the Equipment, the Personal Property and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Fixtures, the Equipment, the Personal Property sent to Borrower in accordance with the provisions hereof at least ten (10) business days prior to such action, shall constitute commercially reasonable notice to Borrower;

(l)  apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Security Instrument or any other Loan Document to the payment of the following items in any order in its sole discretion: (i) taxes; (ii) insurance premiums; (iii) interest on the unpaid principal balance of the Note; (iv) amortization of the unpaid principal balance of the Note; and (v) all other sums payable pursuant to the Note, this Security Instrument and the other Loan Documents, including without limitation advances made by Lender pursuant to the terms of this Security Instrument;

(m)  apply the undisbursed balance of any sums deposited or held constituting the deficiency in Insurance Proceeds or Condemnation Proceeds, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its discretion; or

(n)  pursue such other remedies as Lender may have under applicable law.

Security Instrument - Page 15 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

**Section 7.2    Application of Proceeds.** The purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

**Section 7.3    Right to Cure Defaults.** Upon the occurrence and during the continuance of any Event of Default, or if Borrower fails to make any payment or to do any act as herein provided, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, make any payment or do any act required of Borrower hereunder in such manner and to such extent as Lender may deem reasonably necessary to protect the security hereof. Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Debt, and the reasonable and actual cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 7.3, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand. All such costs and expenses incurred by Lender in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender. All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

**Section 7.4    Actions and Proceedings.** Lender has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its reasonable discretion, if Borrower is failing to do so, decides should be brought to protect its interest in the Property.

**Section 7.5    Recovery of Sums Required To Be Paid.** Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

**Section 7.6    Other Rights, Etc.** (a) Nothing contained in this Security Instrument and no act done or omitted by Lender pursuant to the power and rights granted to Lender hereunder (including without limitation, the exercise by Lender of the option granted it in Section 1.2 of this Security Instrument and the collection of the Rents and the sums due under the Lease Guaranties and the application thereof as provided in the Loan Documents) shall be deemed to be a waiver by Lender of its rights and remedies under the Loan Agreement, the Note or the other Loan

Documents, and this Security Instrument is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any guarantor or any indemnitor with respect to the Loan to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other Loan Documents.

(b)     It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for decline in value of the Property, for failure to maintain any insurance policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

(c)     Upon the occurrence and continuance of an Event of Default, Lender may resort for the payment and performance of the Obligations (including, but not limited to, the payment of the Debt) to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument. The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Upon the occurrence and continuance of an Event of Default, Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

**Section 7.7     Right to Release Any Portion of the Property**. Upon the occurrence and continuation of an Event of Default, Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a lien and security interest in the remaining portion of the Property.

**Section 7.8     Right of Entry**. Upon the occurrence and continuation of an Event of Default, and upon reasonable notice to Borrower, Lender and its agents shall have the right to enter and inspect the Property at all reasonable times, subject to the rights of tenants under the Leases.

**Section 7.9     Bankruptcy**.

(a)  Upon or at any time after the occurrence of an Event of Default, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(b)  If there shall be filed by or against Borrower a petition under the Bankruptcy Code, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject such Lease. Lender shall have the right, but not the obligation, to serve upon Borrower within such ten (10) day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code, and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after Lender's notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

## ARTICLE VIII – PREPAYMENT

**Section 8.1**   **Prepayment**. The Debt may not be prepaid in whole or in part except in accordance with the express terms and conditions of the Loan Agreement and the Note._

## ARTICLE IX – INDEMNIFICATION

**Section 9.1**   **General Indemnification**. The indemnification provisions set forth in the Loan Agreement are hereby incorporated by reference into this Security Instrument to the same extent and with the same force as if fully set forth herein. Any amounts payable to Lender by reason of the application of this Section 9.1 shall become immediately due and payable and shall be secured by this Security Instrument.

**Section 9.2**   **Mortgage and/or Intangible Tax**. Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless Lender and any Person claiming by or through Lender (collectively, the "**Indemnified Parties**") from and against any and all losses imposed upon or incurred by or asserted against Lender and any Person claiming by or through Lender and directly or indirectly arising out of or in any way relating to any mortgage, recording, stamp, intangible or other similar taxes required to be paid by any Person under applicable legal requirements in connection with the execution, delivery, recordation, filing, registration, perfection or enforcement of this Security Instrument or any of the Loan Documents (but excluding any income, franchise or other similar taxes).

## ARTICLE X – WAIVERS

**Section 10.1**   **Waiver of Counterclaim**. To the extent permitted by applicable law, Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way

Security Instrument - Page 18 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

connected with this Security Instrument, the Note, any of the other Loan Documents, or the Obligations.

Section 10.2 **Marshalling and Other Matters**. To the extent permitted by applicable law, Borrower hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by applicable law.

Section 10.3 **Waiver of Notice**. To the extent permitted by applicable law, Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Security Instrument or the Loan Agreement specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Lender is required by applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument or the Loan Agreement do not specifically and expressly provide for the giving of notice by Lender to Borrower.

Section 10.4 **Waiver of Statute of Limitations**. To the extent permitted by applicable law, Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Debt or performance of its Other Obligations.

Section 10.5 **Waiver of Jury Trial**. EACH PARTY HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND FOREVER WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST, WITH REGARD TO THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH PARTY AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE PARTIES.

## ARTICLE XI – EXCULPATION

Section 11.1 **Exculpation**. The exculpatory provisions set forth in the Loan Agreement are hereby incorporated by reference into this Security Instrument to the same extent and with the same force as if fully set forth herein.

## ARTICLE XII – NOTICES

**Section 12.1** <u>Notices</u>. All notices or other written communications hereunder shall be delivered in accordance with the notice requirements set forth in the Loan Agreement.

## ARTICLE XIII - APPLICABLE LAW

**Section 13.1** <u>Governing Law</u>. THIS SECURITY INSTRUMENT SHALL BE DEEMED TO BE A CONTRACT ENTERED INTO PURSUANT TO THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED AND SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED, PROVIDED HOWEVER, THAT WITH RESPECT TO THE CREATION, PERFECTION, PRIORITY AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS OF THIS SECURITY INSTRUMENT, THE DETERMINATION OF DEFICIENCY JUDGMENTS, THE PROVISIONS OF THIS SECURITY INSTRUMENT REGARDING ASSIGNMENTS OF RENTS AND LEASES, AND THE EXERCISE OF REMEDIES PURSUANT TO THIS SECURITY INSTRUMENT, THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED SHALL APPLY.

**Section 13.2** <u>Usury Laws</u>. Notwithstanding anything to the contrary, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed interest, the interest contracted for, charged or received by Lender shall never exceed the maximum lawful rate or amount, (b) in calculating whether any interest exceeds the lawful maximum, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the lawful maximum, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding indebtedness of Borrower to Lender, or if there is no such indebtedness, shall immediately be returned to Borrower.

**Section 13.3** <u>Provisions Subject to Applicable Law</u>. All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Instrument or any application thereof shall be invalid or unenforceable, the remainder of this Security Instrument and any other application of the term shall not be affected thereby.

## ARTICLE XIV – DEFINITIONS

**Section 14.1** <u>Definitions</u>. All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in singular or plural form and the word "**Bankruptcy Code**" shall mean Title 11 of the United States Code entitled "Bankruptcy", as amended from time to time, and any successor statute or statutes and all rules and regulations from time to time promulgated thereunder, the word "**Borrower**" shall mean each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein, the word "**Property**"

shall include any portion of the Property and any interest therein, and the phrases "**attorneys' fees**", "**counsel fees**" and "**legal fees**" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

## ARTICLE XV- MISCELLANEOUS PROVISIONS

**Section 15.1    No Oral Change.** This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 15.2    Successors and Assigns.** This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

**Section 15.3    Inapplicable Provisions.** If any term, covenant or condition of the Note, the Loan Agreement or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Note, the Loan Agreement and this Security Instrument shall be construed without such provision, and the remaining provisions of this Security Instrument shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Security Instrument, unless such continued effectiveness of this Security Instrument, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

**Section 15.4    Headings, Etc.** The headings and captions of various Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 15.5    Number and Gender.** Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

**Section 15.6    Subrogation.** If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Borrower's obligations hereunder, under the Loan Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

**Section 15.7    Limitation on Lender's Responsibility.** This Security Instrument shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender.

Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to lease the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default unless such loss is caused by the gross negligence, willful misconduct or bad faith of Lender. Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Security Instrument and Borrower shall defend and indemnify Lender for, and hold Lender harmless from, (a) any and all liability, loss or damage which may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Security Instrument, and (b) any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Lender by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties, unless caused by the gross negligence, willful misconduct or bad faith of Lender. Should Lender incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Security Instrument and by the other Loan Documents and Borrower shall reimburse Lender therefor immediately upon demand and upon the failure of Borrower so to do Lender may, at its option, declare the Obligations to be immediately due and payable. No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession."

**Section 15.8** **Trustee; Successor Trustee.** Trustee shall not be liable for any error of judgment or act done by Trustee, or be otherwise responsible or accountable under any circumstances whatsoever, except if the result of Trustee's gross negligence, willful misconduct or bad faith. Trustee shall not be personally liable in case of entry by him or anyone acting by virtue of the powers herein granted him upon the Property for debts contracted or liability or damages or damages incurred in the management or operation of the Property. Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by him hereunder or believed by him to be genuine. Trustee shall be entitled to reimbursement for actual expenses incurred by him in the performance of his duties hereunder and to reasonable compensation for such of his services hereunder as shall be rendered. Borrower will, from time to time, reimburse Trustee for and save and hold him harmless from and against any and all loss, cost, liability, damage and reasonable expense whatsoever incurred by him in the performance of his duties, except to the extent caused by or resulting from the gross negligence, willful misconduct or bad faith of Trustee. All monies received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other monies (except to the extent required by law) and Trustee shall be under no liability for interest on any monies received by him hereunder. Trustee may resign by giving of notice of such resignation in writing to Lender. If Trustee shall die, resign or become disqualified from acting in the execution of this trust or shall fail or refuse to exercise the same when requested by Lender or if for any or no reason and without cause Lender shall prefer to appoint a substitute trustee to act instead of the original Trustee named herein, or any prior successor or substitute trustee, Lender shall, without any formality or notice to Borrower or any other person, have full power to appoint a substitute trustee and, if Lender so elects, several

Security Instrument - Page 22 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

substitute trustees in succession who shall succeed to all the estate, rights, powers and duties of the aforenamed Trustee. Each appointment and substitution shall be evidenced by an instrument in writing which shall recite the parties to, and the book and page of record of, this Security Instrument, and the description of the real property herein described, which instrument, executed and acknowledged by Lender, shall (i) be conclusive proof of the proper substitution and appointment of such successor Trustee or Trustees, (ii) duly assign and transfer all the estates, properties, rights, powers and trusts of Trustee so ceasing to act and (iii) be notice of such proper substitution and appointment to all parties in interest. In addition, such Trustee ceasing to act shall duly assign, transfer, and deliver any of the property and monies held by Trustee to the successor Trustee so appointed in its or his place. The Trustee may act in the execution of this trust and may authorize one or more parties to act on his behalf to perform the ministerial functions required of him hereunder, including without limitation, the transmittal and posting of any notices and it shall not be necessary for any Trustee to be present in person at any foreclosure sale.

## ARTICLE XVI - STATE SPECIFIC PROVISIONS

**Section 16.1** <u>State Specific Provisions</u>. State specific provisions, if any, are outlined on <u>Exhibit B</u> attached hereto and incorporated herein.

**Section 16.2** <u>Principles of Construction</u>. In the event of any inconsistencies between the terms and conditions of this <u>Article 16</u> and the terms and conditions of this Security Instrument, the terms and conditions of this <u>Article 16</u> shall control and be binding.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Security Instrument - Page 23 of 24
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767

IN WITNESS WHEREOF, the party hereto has caused this Security Instrument to be duly executed by its duly authorized representative, all as of the day and year first above written.

BORROWER:

FOOTHILL AND TOWNE, LLC, a
California limited liability company

By: _____
Name:  ASHLEY NGUYEN
Title:   President

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _California_ )
                                 ) ss
COUNTY of _Orange_ )

On _March 16, 2023_, before me, _Lisa Nguyen_, a Notary Public, personally appeared _Ashley Nguyen_
(Insert name and title exactly as they appear on signature page)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _California_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

LISA NGUYEN
COMM # 2394175
ORANGE County
California Notary Public
Comm Exp Feb. 16, 2026

Notary Public                                                  (Seal)

### MAIL TAX STATEMENTS AS DIRECTED ABOVE

Security Instrument
Property Address: 700, 704 EAST FOOTHILL BOULEVARD, POMONA, California 91767